**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| RECYCLED MATERIALS COMPANY, INC. ) | Case No. 14-24447 HRT |
| ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| In re: ) | Case No. 14-24448 HRT |
| ) | Chapter 11 |
| KVJ EQUIPMENT LEASING, LLC. ) | |
| ) | ***Jointly Administered Under*** |
| Debtor. ) | ***Case No. 14-24447 HRT*** |

**APPLICATION (A) FOR AUTHORITY TO SELL PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. §§ 363(b) AND (f) AND (B) TO EMPLOY AND COMPENSATE RITCHIE BROS. AUCTIONEERS (AMERICA) INC. AS AUCTIONEER**

Recycled Materials Company, Inc. ("RMCI") and KVJ Equipment Leasing, LLC ("KVJ" and, with RMCI, the "Debtors"), Debtors in Possession herein, by and through their counsel Sender Wasserman Wadsworth, P.C., for their Application (A) for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. §§ 363(b) and (f) and (B) to Employ and Compensate Ritchie Bros. Auctioneers (America) Inc. as Auctioneer (the "Application"), hereby state as follows:

Background

1. The Debtors filed for relief under chapter 11 of the Bankruptcy Code on October 27, 2014 (the "Petition Date") and are operating as Debtors in Possession pursuant to 11 U.S.C. § 1107.

2. RMCI is engaged in the business of recycling, reusing, excavating and deconstructing aggregate (mineral materials such as sand, gravel, and crushed stone used to form compounds such as concrete or pavement). KVJ owns the vehicles used by RMCI in its business.

3. Debtors seek to sell personal property, which primarily consists of heavy equipment and vehicles (the "Assets"). The Assets are described with particularity in the Equipment List attached hereto as Exhibit 1. Debtors desire to sell the Assets because the Assets are no longer critical to operations and sale of the Assets will reduce insurance premiums.

4. Debtors seek authority to employ Ritchie Bros. Auctioneers (America) Inc. ("RBA") as auctioneer and to sell the Assets at public auction. The auction shall be conducted in Denver, Colorado on June 11, 2015.

*History of Liens Against the Assets*

5. The Assets are subject to a lien in favor of Buesing Corp. ("Lender"). As described later in this Application, Lender is consenting to the sale of the Assets free and clear of liens with Lender's lien to attach to the proceeds.

6. Prior to Lender obtaining a Lien against the Assets, Centennial Bank and Colorado Lending Source, Ltd. claimed liens against the Assets. Centennial Bank claimed a senior lien and Colorado Lending Source, Ltd. claimed a junior lien. Those liens were modified by the Court's Final Order Approving Debtor in Possession Financing that entered on May 7, 2015 (the "Final Order"). In the Final Order, the Court allowed Centennial Bank's secured claim in the amount of $900,000 and voided its lien to the extent it secures more than $900,000. The Court voided Colorado Lending Source, Ltd.'s lien as being wholly unsecured. Additionally, the Court granted Lender a lien against the Assets upon Debtors' payment of $900,000 to Centennial Bank. Specifically, the Final Order provides as follows:

> G. <u>11 U.S.C. §§ 506(a) and (d) Findings</u>. The total value of the Debtors' assets is $900,000.00. Centennial Bank's secured claim is allowed in the amount of $900,000.00. The remainder of Centennial Bank's claim is an unsecured claim. The claim of Colorado Lending Source, Ltd. is junior to Centennial Bank's claim and therefore is an unsecured claim in its entirety. The liens held by Centennial Bank in the Debtors' assets are void to the extent they secure a claim amount in excess of $900,000.00. The lien held by Colorado Lending Source, Ltd. in RMCI's assets is void.
>
> . . .
>
> 6. <u>Payment of Centennial Bank's Allowed Secured Claim</u>. The Debtors are directed to pay the $900,000 allowed secured claim of Centennial Bank as follows: (a) the Debtors shall deposit $210,708.91 into the registry of the Denver District Court for a determination by that court in civil action no. 2014CV32958 of any amount Centennial Bank may owe to the Receiver and (b) the Debtors shall pay the remaining $689,291.09 to Centennial Bank.
>
> 7. <u>Post-petition Financing Lien</u>. Pursuant to 11 U.S.C. § 364(c)(2), upon payment by Debtors of $900,000 as set forth above, Lender shall have and is hereby granted a senior lien on all property of the estates as provided in the DIP Loan.

       8. <u>All Other Liens Void</u>. Pursuant to 11 U.S.C. § 506(d), upon payment by Debtors of $900,000 as set forth above, the liens held by Centennial Bank in the Debtors' assets are void. The lien held by Colorado Lending Source, Ltd. in RMCI's assets is void.

Final Order, Docket No. 227.

      7.    Lender has loaned Debtor $900,000 so that Debtor may comply with the above provisions of the Final Order. On May 18, 2015, Debtors tendered $689,290.09 to Centennial Bank and filed a Motion to Deposit Funds in the Court Registry ("Motion to Deposit") wherein they seek relief from the Denver District Court to deposit $210,708.91 "for a determination by that court in civil action no. 2014CV32958 of any amount Centennial Bank may owe to the Receiver." *See* Final Order. Debtors' counsel is in possession of the $210,708.91 and is prepared to deposit it in the registry of Denver County District Court once the Motion to Deposit is granted. A copy of the May 18, 2015 letter to Centennial Bank's counsel is attached hereto as <u>Exhibit 2</u>. A copy of the Motion to Deposit Funds in the Court Registry, and proposed order, is attached hereto as <u>Exhibit 3</u>.

      8.    Accordingly, the Assets are subject only to the lien of Lender.

<u>Employment of RBA and Sale by Public Auction is in the Best Interests of the Estate</u>

      9.    The Debtors seek authority to sell the Assets at public auction pursuant to 11 U.S.C. §§ 363(b) and (f), free and clear of liens with liens attaching to the proceeds of the sale.

      10.    The Debtors seek authority to employ RBA to conduct the auction sales pursuant to the terms of the contract attached hereto as <u>Exhibit 4</u>.

      11.    RBA is available to provide the necessary services.

      12.    There is no conflict of interest between RBA and the bankruptcy estate, the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee's office, or any person employed in the office of the United States Trustee. *See* Affidavit of Auctioneer/Liquidator attached hereto as <u>Exhibit 5</u>.

      13.    As compensation for its services, RBA will be paid a commission based on the gross sale price of the equipment sold at auction as follows: (a) nine and one-quarter percent (9.25%) for any lot in excess of $2,500; and (b) for any lot realizing $2,500 or less, twenty-five percent (25%), with a minimum fee of $100.00 per lot. In addition, should RBA organize and pay for the refurbishing, repair, or transportation of any part of the Assets, RBA will be reimbursed for these costs plus ten (10%) provided the total (a) costs of refurbishment do not exceed $150,000 without further authorization from Debtors, and (b) transportation costs do not exceed an estimated $25,000. RBA may charge purchasers an administrative fee of: (a) 2.5% on lots selling for more than $2,500 (up to a maximum of $950); or (b) 10% on lots selling for $2,500 or less.

14. The Debtors have selected RBA as the auctioneer because (1) RBA is the world's largest auctioneer of the exact type of equipment owned by the bankruptcy estate. Given its resources and reach, RBA's auctions should generate the largest bidding pool and the highest returns; and (2) RBA's commission structure is reasonable and consistent with market rates for other auctioneers.

15. Given RBA's experience and its advertising and internet reach, the Debtors firmly believe that selling the Assets through RBA will generate the highest and best return. For all of the foregoing reasons, the Debtors seek authority to employ RBA and approval of the contract attached hereto as Exhibit 4.

### Sale Free and Clear of Liens Pursuant to 11 U.S.C. §§ 363(b) and (f)

16. Under 11 U.S.C. § 363(b), the Debtors may sell property of the estate outside of the ordinary course of business after notice and a hearing. The standard employed in determining whether a motion to approve the sale of assets should be granted is the "business judgment rule." *See In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr.D.Colo. 2004) (following *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983)). Under the business judgment rule, the Court must find that the debtor in possession exercised sound business judgment for the terms of the proposed sale. In making this determination, courts consider the following factors: (a) any improper or bad motive; (b) whether the price is fair and the negotiations or bidding occurred at arm's length; and (c) the adequacy of the sale procedures, i.e. whether there has been proper exposure to the market and accurate and reasonable notice to all parties in interest. *Id.*

17. The proposed auction should be approved in this case because it satisfies the *Castre* factors. There is no improper or bad motive in entering the contract with RBA. The purpose of selling the Assets is to liquidate assets that are no longer critical to operations and either pay the proceeds to Lender or use them to fund ongoing operations, subject to Lender's consent. Bidding will occur at arm's length and the sale procedures are adequate. The public auction will be marketed, sales will be made to third-party bidders. The Debtors believe that RBA is best situated to sell the Assets both because of its prior involvement in this case and its experience selling similar assets.

18. Under 11 U.S.C. § 363(f), the Debtors may sell property of the estate free and clear of any interest in such property of an entity other than the estate if one or more of following criteria are met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

19. As set forth above, the Assets are subject to the Lender's lien. Lender agrees to the sale of the Assets free and clear of all liens with Lender's lien attaching to the proceeds.

20. For all of the foregoing reasons, the Debtors assert the sale of the Assets is in the best interests of the estate and creditors because sale of the Assets will reduce Debtor's insurance premiums and the proceeds, subject to Lender's approval, may be used to fund operations.

21. Additionally, the Debtors assert that the proposed sale free and clear of liens, claims and interests with such liens, claims and interests to attach to the proceeds of sale is proper under 11 U.S.C. §§ 363(b) and (f), and should be approved by the Bankruptcy Court.

22. To make the Assets available for auction sale on June 11, 2015, the Trustee requests the Court suspend the operation of the fourteen-day stay under Fed. R. Bankr. P. 6004(h).

23. Filed with this Motion is a motion for order shortening notice of the Motion from twenty-one days to fourteen days.

WHEREFORE, the Debtors request that the Court enter an Order in the form attached hereto (a) authorizing the Debtors to employ RBA as auctioneer on the terms set forth in the contract attached hereto as Exhibit 4, (b) authorizing the sale of the Assets at public auction free and clear of liens, with any liens attaching to proceeds, and (c) granting such other and further relief deemed just and proper.

DATED this 20th day of May, 2015.

Respectfully submitted,

SENDER WASSERMAN WADSWORTH, P.C.

*/s/ Aaron J. Conrardy*
Harvey Sender, #7546
David V. Wadsworth, #32066
Aaron J. Conrardy, #40030
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
(303) 296-1999; (303) 296-7600 (fax)
hsender@sww-legal.com
dwadsworth@sww-legal.com
aconrardy@sww-legal.com
Attorneys for the Debtors in Possession